[Docket No. 11]

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| TRUSTEES OF INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES DISTRICT COUNCIL 711 HEALTH & WELFARE FUND, VACATION FUND, AND PAINTERS DISTRICT COUNCIL 711 FINISHING TRADES INSTITUTE, for and on themselves and said FUNDS; and INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES DISTRICT COUNCIL 711, <br><br> Plaintiffs, <br><br> v. <br><br> LEO CONSTRUCTING, LLC, <br><br> Defendant. | Civil No. 22-cv-04645 (RMB/MJS) <br><br> **OPINION** |

**RENÉE MARIE BUMB, Chief United States District Judge:**

Plaintiffs, Trustees of International Union of Painters and Allied Trades District 711 Health & Welfare Fund, Vacation Fund, and Painters District Council 711 Finishing Trades Institute (the Funds), and International Union of Painters and Allied Trades District Council 711 (the Union), ask this Court to enter default judgment against Defendant, Leo Constructing, LLC (Leo). Plaintiffs claim Leo violated the parties' Collective Bargaining Agreement (CBA), the Employee Retirement Income Security Act of 1974 (ERISA), and the Labor Management Relations Act (LMRA) by, among other things, failing to remit fringe benefit contributions to the Funds, not remitting dues check-offs to the Union, and refusing to comply with the Funds' audit requests. Because Leo has not answered or otherwise

defended this action, and since Plaintiffs have shown default judgment is appropriate, the Court **GRANTS** Plaintiffs' default judgment motion.

I. BACKGROUND

The Funds are trust funds established and maintained under the LMRA and employment benefit plans under ERISA created to provide health, retirement, and other benefits to eligible participants and their beneficiaries. [Compl. ¶ 4 (Docket No. 1).] The Union is a labor organization under both the LMRA and ERISA. [*Id.* ¶ 10.] Leo qualifies as an employer under ERISA. [*Id.* ¶ 13.]

According to Plaintiffs, Leo "was a party to and agreed to abide by" the CBA with the Union. [*Id.* ¶ 13.] Leo also agreed to be bound by "the Agreements and Declarations of Trusts" (the Trust Agreements) governing the Funds. [*Id.* ¶ 14.] Under the CBA and Trust Agreements, Leo agreed to, among other things, make timely fringe benefit contributions to the Funds for covered employees, remit administrative dues for Leo's represented employees, and comply with any audit requests. [*Id.* ¶¶ 18-21; *see also* Certification of Steven J. Bushinsky, Esq. (Bushinsky Cert.) ¶ 2, Ex. A (CBA) (Docket No. 11-2).] Leo also agreed to follow the "Policy for the Collection of Delinquent Contributions" (the Collection Policy), which establishes, among other things, dates when contributions are due, a random audit program, and various penalties for not timely contributing fringe benefits. [Compl. ¶ 22; *see also* Bushinsky Cert. ¶ 2, Ex. B (Collection Policy).]

According to Plaintiffs, the Funds' auditor requested Leo to produce its financial records from January 2019 to December 2021 to determine whether Leo properly remitted fringe benefits. [Compl. ¶¶ 25, 27-31.] Despite repeat demands, Leo has produced no financial records. [*Id.* ¶ 32.] In addition, Leo has allegedly failed to remit the contractually

required fringe benefits to the Funds from June 2021 to March 2022. [*Id.* ¶ 49.]  Leo has also allegedly not remitted dues check-offs to the Union as required by the CBA even though the Union has demanded payment of those funds. [*Id.* ¶¶ 55-58.]

As a result, Plaintiffs sued Leo claiming it violated ERISA and the CBA by not making the required contributions to the Funds.  [*See generally* Compl.]  Plaintiffs seek an award of all unpaid contributions, interest, liquidated damages, reasonable attorneys' fees, and costs as allowed by Sections 502(g)(2) and 515 of ERISA.  29 U.S.C. §§ 1132(g)(2), 1145.  [*Id.*]  Plaintiffs also seek an order compelling Leo to permit Plaintiffs to inspect Leo's books and records to determine whether Leo properly paid fringe benefits and dues check-offs.  [*Id.*]  In addition, Plaintiffs seek an order compelling Leo to pay outstanding dues check-offs as required by the CBA.  [*Id.*]

Plaintiffs served a copy of the summons and complaint on Leo's registered agent and manager in Stratford, Connecticut.  [Bushinsky Cert. ¶ 3, Ex. C.]  Leo is a registered Connecticut limited liability company.  The process server made service at the address listed in Leo's Articles of Organization.[1]  Leo failed to answer the complaint, or otherwise respond.  Plaintiffs then obtained the Clerk's Entry of Default against Leo.  [Docket No. 8.]

Plaintiffs now move for default judgment seeking a judgment against Leo for $40,626.23. [Bushinsky Cert. ¶ 8.]  Plaintiffs break down the judgment amount as follows:

- $26,465.96 for unpaid contributions

---

[1] According to the Affidavit of Service, the process server served the summons and complaint on David B. Greenfield. [Bushinsky Cert. ¶ 3, Ex. C.]  Greenfield is Leo's manager and registered agent.  *See* Connecticut, Department of Business (last accessed Feb. 14, 2024), https://service.ct.gov/business/s/onlinebusinesssearch?businessNameEn=Mw1%2FiS658G27J8J6TyLfltqG V1cM7TvrdEtJ4z0GycBK%2FhnKuEG0cVKq0Juzhd%2Bf.  The Court takes judicial notice of Leo's Articles of Organization filed on the government's website.  *See Furando v. Ortiz*, 2020 WL 1922357, at *1 n.3 (D.N.J. Apr. 21, 2020) ("The Court may take judicial notice of public records and government documents on websites run by government agencies.").

- $3,606.24 for interest
- $5,293.19 in liquidated damages
- $5,260.84 for attorneys' fees and costs

= $40,626.23.

[*Id.*]

## II. DISCUSSION

### A. Motion for Default Judgment Standard

By Federal Rule of Civil Procedure 55(b)(2), courts can enter default judgment against a properly served defendant who does not timely file a responsive pleading. Before a court may entertain a default judgment motion, the Clerk of the Court must have entered default against the party who has not appeared or otherwise defended the lawsuit. Fed. R. Civ. P. 55(a). While courts retain significant discretion to enter default judgment, that discretion is limited because of the judiciary's "preference that cases be disposed of on the merits whenever practicable." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180-81 (3d Cir. 1984).

Thus, before entering default judgment, a court must be satisfied that: (1) it has jurisdiction, both subject matter and personal, over the case and defaulting party, and service of process was proper, (2) the party seeking judgment presented "a legitimate cause of action," and (3) entering default judgment would be "proper." *Chanel, Inc. v. Matos*, 133 F. Supp.3d 678, 683-84 (D.N.J. 2015) (quoting *Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012)). To determine whether entering default judgment is appropriate, courts must examine: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.85 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir.

4

1984)).  In doing so, courts must accept as true only the complaint's factual allegations, not allegations on damages.  *PPG Indus. Inc. v. Jiangsu Tie Mao Glass Co.,* 47 F.4th 156, 161 (3d Cir. 2022).

### A. Jurisdiction and Service

To start, the Court has jurisdiction over this suit and Leo, and Plaintiffs properly served Leo.

First, the Court has subject matter jurisdiction over Plaintiffs' suit based on both ERISA, 29 U.S.C. § 1132(e)-(f) and the LMRA, 29 U.S.C. § 185(a).  Thus, the Court has federal question jurisdiction.  28 U.S.C. § 1331.

Second, the Court has personal jurisdiction over Leo.  Exercising personal jurisdiction requires statutory and constitutional authorization.  *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 293 (3d Cir. 1984) ("Because personal jurisdiction necessarily addresses both the power of the court to create or affect legal interests and the rules of competence whereby adjudicatory authority is asserted, it is tested against both constitutional and statutory standards.").  For the statutory authorization, Federal Rule of Civil Procedure 4(K)(1)(A) authorizes courts to exercise personal jurisdiction over a defendant if the plaintiff serves the defendant as "authorized by federal law."  *See also Alcatel-Lucent USA Inc. v. Borlabi*, 2016 WL 3406227, at *2 (D.N.J. June 16, 2016) ("As to the statutory dimension, Fed. R. Civ. P. 4(e) provides that a Court has jurisdiction over a defendant if he is served 'pursuant to the law of the state in which the district is located ... [u]nless otherwise provided by federal law.'" (alterations in original)).  Turning to the constitutional authorization, courts may exercise personal jurisdiction over a non-resident defendant only if the defendant has "certain minimum contacts with the State such that the maintenance of the suit does not offend traditional

5

notions of fair play and substantial justice." *Aldossari ex rel. Aldossari v. Ripp*, 49 F.4th 236, 257 (3d Cir. 2022) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011)). But "[w]here Congress has spoken by authorizing nationwide service of process, . . . jurisdiction of a federal court need not be confined by the defendant's contacts with the state in which the federal court sits." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 369 (3d Cir. 2002). Rather, the "federal court's personal jurisdiction may be assessed on the basis of the defendant's national contacts[,]" i.e., its contacts with the United States as a whole, "when the plaintiff's claim rests on a federal statute authorizing nationwide service of process." *Id.*

When enacting ERISA, Congress authorized nationwide service of process. 29 U.S.C. § 1132(e)(2). ERISA allows a plaintiff to serve a defendant "in any other district where [the] defendant resides or may be found." *Id.* Given ERISA's nationwide service of process provision, Third Circuit courts examine the defendant's contacts with the United States as a whole, rather than a particular forum. *Trs. of the Nat'l Elevator Indus. Pension, Health Benefit, Educ., Elevator Indus. Work Pres. Funds v. All City Elevator, Inc.*, 2018 WL 3043299, at *3-4 (E.D. Pa. May 22, 2018) ("The majority of Circuit Courts have held that where a statute provides for nationwide service of process, the exercise of personal jurisdiction is based on contacts with the United States as a whole (or 'national contacts'), rather than a particular state, thus giving jurisdiction to any federal court if the contacts with the United States are sufficient."). And if the defendant has sufficient contacts with the United States, then any district court can exercise personal jurisdiction over a defendant in an ERISA action. *See, e.g.*, *Fink ex rel. Nation Safe Drivers Emp. Stock Ownership Plan v. Wilmington Tr.*, N.A., 473 F. Supp. 3d 366, 372-73 (D. Del. 2020) (ruling court had personal jurisdiction over defendants because ERISA allows nationwide service of process and defendants resided and conducted business in the United

States, and thus defendants had "sufficient minimum contacts with the United States for this Court to exercise personal jurisdiction over them").

The Court here has personal jurisdiction over Leo because it resides and conducts business in the United States. *Id.* Leo is a limited liability company, existing under the laws of Connecticut with places of business there and in New Jersey. [Compl. ¶¶ 2, 14-15.] Leo also conducts business in both states. [*Id.*] Thus, Leo has enough contacts with the United States for the Court to exercise personal jurisdiction over it given ERISA. *Fink*, 473 F. Supp. 3d at 373; *see also Rafferty v. Metro. Life Ins.*, 2016 WL 153225, at *3 (M.D. Pa. Jan. 13, 2016) (finding defendant had sufficient contacts with the United States because defendant resided in country and ERISA's nationwide service of process provision). Plaintiffs also served Leo in accordance with ERISA, and so the Court has personal jurisdiction over it. *Su v. Marlton Pike Precision, LLC 401(K) & Profit-Sharing Plan*, 2024 WL 489542, at *3 (D.N.J. Feb. 8, 2024) (ruling court had personal jurisdiction over defendant when plaintiff properly served defendant in the United States under ERISA's nationwide service of process provision); *see also Alcatel-Lucent*, 2016 WL 3406227, at *2-3 (finding personal jurisdiction's statutory and constitutional components satisfied where plaintiff served defendant in accordance with ERISA and defendant had sufficient minimum contacts with the United States).

Lastly, Plaintiffs properly served Leo. Again, ERISA allows a plaintiff to serve a defendant "in any other district where [the] defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Plaintiffs served Leo by leaving a copy of the summons and complaint on Leo's manager and registered agent. [Bushinsky Cert. ¶ 3, Ex. C.] Serving Leo this way satisfied both ERISA and Federal Rule of Civil Procedure 4. Fed. R. Civ. P. 4(e)(2)(C) (allowing service of process by delivering a copy of the summons and complaint "to an agent authorized

7

by appointment or by law to receive service of process"); *see also id.* 4(h)(1)(B) (allowing service of process on limited liability company "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by law to receive service of process").

### B. Legitimate Causes of Action

Accepting the complaint's factual allegations as true, *see PPG Indus.*, 47 F.4th at 161, Plaintiffs have pled viable breach of contract and ERISA claims against Leo.

ERISA requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. If an employer fails to contribute to an employee benefit plan as required by a CBA, ERISA allows, among other things, plan participants, beneficiaries, and fiduciaries to bring a civil enforcement action against the employer. *Id.* § 1132(a). ERISA allows those participants, beneficiaries, or fiduciaries to recover unpaid contributions, interest, liquidated damages, reasonable attorney's fees and costs, and such other relief as the Court deems appropriate. *Id.* § 1132(g)(2).

Turning to state contract law, an aggrieved contracting party may recover for breach of contract if the party establishes: (1) the existence of a valid contract; (2) performance by the non-breaching party; (3) defendant breached the agreement; and (4) damages. *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021).

Plaintiffs here allege that Leo agreed to abide by the CBA by employing Union workers. [Compl. ¶¶ 16-17.] By the CBA, Leo agreed to, among other things, contribute

8

fringe benefits to the Funds and pay the Union dues check-offs. [*Id.* ¶¶ 18, 56; *see also* Bushinsky Cert. ¶ 2, Ex. A, art. 4.1, 11.1.] Plaintiffs claim Leo failed to make the contractually required fringe contributions from June 2021 through March 2022, and never paid the Union any dues check-offs. [Compl. ¶¶ 49, 57.] And, despite agreeing to the Collection Policy, Leo failed to respond to the Funds' audit requests seeking Leo's financial records from January 2019 through December 2021. [*Id.* ¶¶ 31-32.] Thus, Plaintiffs have pled viable breach of contract and ERISA claims. *See Trs. of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund v. Eagle Indus., LLC*, 2022 WL 5169532, at *3 (D.N.J. Oct. 4, 2022) (finding plaintiff pled a legitimate claim under ERISA based on nearly identical factual allegations); *see also Trs. of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund v. Sky High Mgmt.,* 2020 WL 1698784, at *3 (D.N.J. Apr. 7, 2020) (finding plaintiff pled viable breach of contract and ERISA claims based on similar factual allegations).

### C. *Chamberlain* Factors

After weighing the *Chamberlain* factors, this Court finds entering default judgment against Leo appropriate.

First, without default judgment, Plaintiffs would suffer prejudice because they would be unable to vindicate their contractual and statutory rights. *See Gowan v. Cont'l Airlines, Inc.*, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012) (finding plaintiff would suffer prejudice without default judgment "as Plaintiff has no other means of seeking damages for the harm allegedly caused by Defendant"). Indeed, "because delinquent contributions can negatively impact the Plaintiffs' ability to pay their beneficiaries, Plaintiffs would be prejudiced if default judgment was not entered in their favor." *Trs. of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund v. Cape Sign Serv., Inc.,* 2021 WL 5564238, at *3 (D.N.J. Nov.

9

29, 2021) (cleaned up, citation and internal quotation marks omitted); *see also Trs. of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund v. J.B.J. Mgmt. LLC,* 2021 WL 1660862, at *3 (D.N.J. Apr. 27, 2021) (ruling "Plaintiffs have been harmed by not receiving payment or being allowed to audit Defendant's records, and that Plaintiffs will have no other means of vindicating their claims against Defendant absent default judgment").

Second, Leo has presented no meritorious defense or even a response. Given Leo's failure to appear, the Court "cannot consider any defenses." *J.B.J. Mgmt.*, 2021 WL 1660862, at *3; *see also Eagle Indus.*, 2022 WL 5169532, at *3 ("Defendant has not presented a meritorious defense because it has not filed an answer or otherwise defended itself, which weighs in favor of granting Plaintiffs' motion for default judgment.").

Third, given Leo's failure to appear, the Court finds it culpable in the default. *Cape Sign Serv.*, 2021 WL 5564238, at *3 (finding defendant's failure to appear "demonstrates culpability in its default"); *see also Sky High Mgmt.*, 2020 WL 1698784, at *3 ("The company's failure to respond 'demonstrates [its] culpability in its default,' and '[t]here is nothing before the Court to show that [its] failure to file an answer was a result of anything other than willful negligence." (alterations in original) (quoting *Dubin Paper*, 2012 WL 3018062, at *4)).

### D. Damages

Having found Plaintiffs are entitled to default judgment, the Court next must determine their damages. Plaintiffs seek a judgment for $40,626.23. [Bushinsky Cert. ¶ 8*; see also* Docket No. 11-3.] Again, ERISA allows Plaintiffs to recover: (1) the full amount of unpaid contributions; (2) interest on the unpaid contributions; (3) the greater of the interest on the unpaid contributions or liquidated damages; and (4) reasonable attorneys' fees and costs. 29 U.S.C. § 1132(g)(2).

10

Plaintiffs here seek $26,465.96 from Leo for unpaid contributions from September 1, 2020 through August 31, 2021. [Bushinsky Cert. ¶ 7.] Plaintiffs support that amount with a spreadsheet from the Funds' administrator office listing payroll periods, dispersals, and check numbers. [*Id.* Ex. D.] For interest, the Collection Policy that Leo agreed to provides that interest accrues at the rate of 2% above prime. [*Id.* ¶ 2, Ex. B.] Plaintiffs calculated the interest on the unpaid contributions to be $3,606.24. [*Id.* ¶ 9.] Plaintiffs support the interest amount with spreadsheets calculating the interest per contribution period. [*Id.* Ex. E.] Onto liquidated damages, the Collection Policy allows for those damages for failing to timely pay contributions. [*Id.* ¶ 2, Ex. B.] Plaintiffs calculate the liquidated damages to be $5,293.19 (20% of the unpaid contributions). [*Id.* ¶ 9.] Because the claimed liquidated damages is greater than the interest, ERISA allows an award of liquidated damages on top of the interest. 29 U.S.C. § 1132(g)(2)(C); *see also J.B.J. Mgmt.*, 2021 WL 1660862, at *3.

Plaintiffs also seek to recover their attorneys' fees and costs. [Bushinsky Cert. ¶ 15.] Plaintiffs have incurred $4,700.50 in attorneys' fees and $560.34 in costs. [*Id.*] ERISA requires courts to award reasonable attorneys' fees and costs in a civil enforcement action against an employer for unpaid contributions. 29 U.S.C. § 1132(g)(2)(D). To determine whether a request for attorneys' fees is reasonable under ERISA, courts perform the lodestar calculation by "determin[ing] the reasonable number of hours expended on the litigation multiplied by a reasonable hourly rate." *United Auto Workers Local 259 Soc. Sec. Dept. v. Metro Auto Ctr.*, 501 F.3d 283, 290 (3d Cir. 2007). A party seeking attorneys' fees must provide "fairly definite information as to hours devoted to various general activities, e.g., partial discovery, settlement negotiations, and the hours spent by various classes of attorneys." *Id.* at 291 (quoting *Evans v. Port Auth.*, 273 F.3d 346, 361 (3d Cir. 2001))).

Plaintiffs had two attorneys and one paralegal working on this matter, with a billable rate of $175 per hour for the attorneys, and $70 per hour for the paralegal. [Bushinsky Cert. ¶ 13.] Courts have found those hourly rates to be reasonable. *Cape Sign Serv.*, 2021 WL 5564238, at *4 (finding identical rates reasonable); *see also Trs. of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund v. Independent Wallcovering, Inc.,* 2022 WL 4773694, at *3 (D.N.J. Oct. 3, 2022) (same); *J.B.J. Mgmt.*, 2021 WL 1660862, at *3 (same). Plaintiffs have also submitted an itemized statement detailing the work performed by the attorneys and paralegal, and the time spent on each task. [Bushinsky Cert. ¶ 14, Ex. F.] The Court finds the hours spent and the hourly rate reasonable given the nature of the case and services rendered. *See Sky High Mgmt.*, 2020 WL 1698784, at *4 (finding plaintiffs' request for attorney's fees and costs totaling $4,673.11 "reasonable under the circumstances"). And the Court finds Plaintiffs' $560.34 in costs reasonable. *Independent Wallcovering,* 2022 WL 4773694, at *3 (finding $551 in costs reasonable). Thus, the Court awards Plaintiffs $5,260.84 for attorneys' fees and costs.

Lastly, ERISA allows a court to award "other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E). By their complaint, Plaintiffs also seek an order requiring Leo to submit to a financial audit to determine whether Leo properly made fringe contributions and paid due check-offs. [*See generally* Compl.] They also request that after the financial audit is performed, the Court enter judgment against Leo for the contributions and dues check-offs found to be owing, together with interest, liquidated damages, and reasonable attorneys' fees and costs allowed by ERISA. [*Id.*] Court-ordered financial audits like the one requested here are permissible "to determine the precise amount of delinquent contributions owed to Plaintiffs." *U.A. Local 322 Pension Fund v. Direct Air LLC*,

2017 WL 5618279, at *5 (D.N.J. Nov. 21, 2017); *see also Sky High Mgmt.*, 2020 WL 1698784, at *4 (ordering audit to determine delinquent contributions).

Accordingly, Leo must comply with a payroll audit by producing all necessary information to Plaintiffs within thirty days of this Opinion. After completing the audit, Plaintiffs shall notify Leo of any more amounts found to be owing, including contributions, interest on unpaid contributions, and liquidated damages as allowed by ERISA. Within ten days after receiving the audit results, Leo must remit to Plaintiffs all amounts due and owing. If Leo pays no amounts found owing, Plaintiffs shall petition the Court for judgment to be entered against Leo for all contributions, interest, and liquidated damages then owing, together with an application for fees and costs.

### III.   CONCLUSION

For the above reasons, the Court **GRANTS** Plaintiffs' motion for default judgment (Docket No. 11), and enters judgment against Leo for $40,626.23 in unpaid contributions, interest, liquidated damages, and reasonable attorneys' fees and costs. The Court also orders Leo to submit to a payroll audit by producing all necessary payroll information to Plaintiffs within thirty days of this Opinion.

An accompanying Order of today's date shall issue.

**s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge

Dated: February 16, 2024